## Case No. 1,905.

### BRITTON v. PAYEN.

Circuit Court, S. D. New York.

[Affirming Case No. 1,906. No opinion can be found.]

---

## Case No. 1,906.

### BRITTON v. PAYEN et al.

### SAME v. BREWSTER et al.

[7 Ben. 219; [1] 9 N. B. R. 445.]

District Court, S. D. New York. March 23, 1874.[2]

BANKRUPTCY — FRAUDULENT PREFERENCE — SETTING ASIDE JUDGMENT — ACTION BY BANKRUPT NECESSARY.

1. On May 17th, 1871, P. commenced a suit against B. and B., to recover for rent then due. One of the partners appeared in the suit, but took no other proceeding. On October 12th, 1871, judgment was entered against the one who had appeared, for failure to answer, and on October 16th an execution to the sheriff was issued on the judgment, under which said sheriff levied on the interest of such partner in a stock of carriages belonging to the firm. On November 6th, 1871, a petition in involuntary bankruptcy was filed against B. and B., and the

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court on appeal. Case not reported.]

sheriff was enjoined. An adjudication in bankruptcy followed and an assignee was appointed, who, on March 12th, 1873, brought a suit to set aside the judgment, execution and levy, as void under the 35th and 39th sections of the bankruptcy act, and another suit to set aside the transfer of two carriages. It appeared in the evidence in these suits, that B. and B. had obtained an extension from their creditors in April, 1871, by giving notes which would fall due on October 17th, 1871; that P.'s agent had refused to join in that extension, but, when the suit was commenced in May, he had said that no judgment would be entered if the rent to accrue subsequently was paid; that some of the subsequent rent was paid; that, about a fortnight before the entry of the judgment, B. became satisfied that the extension notes could not be met, and informed the attorney of P. that they would not be paid; and that, on the 8th or 10th of October, 1871, he turned over to P.'s agent the two carriages sought to be recovered in the second suit, in part payment of rent which had accrued subsequent to P.'s suit. *Held*, that the facts of the first case clearly brought it within the case of Buchanan v. Smith, 16 Wall. [83 U. S.] 277, and also brought it clearly within the case of Wilson v. City Bank, 17 Wall. [84 U. S.] 473.

2. That, although the ruling in Buchanan v. Smith would require a decree in favor of the plaintiff in the first suit, the ruling in Wilson v. City Bank required a decree in favor of the defendant, because, in this case, as in Wilson v. City Bank, although the debtor, by inaction, permitted the creditor to obtain, by judgment and levy of execution, a preference, yet the debtor contributed nothing otherwise to the success or completion of the creditor's acts;

3. That, as Wilson v. City Bank was the later case, it must be followed, and the bill in the first suit must be dismissed;

4. But that the transfer of the two carriages was a positive act by the bankrupts, which distinguished the second of these cases from Wilson v. City Bank, and that the plaintiff was entitled to a decree in the second suit.

5. Buchanan v. Smith, 16 Wall. [83 U. S.] 277, and Wilson v. City Bank, 17 Wall. [84 U. S.] 473, compared.

[In bankruptcy. Suit by John W. Britton, assignee in bankruptcy of Theodore E. Baldwin and Edward W. Burr, against Charles Payen and Matthew T. Brennan, sheriff, etc., and others, also suit by same plaintiff against Henry Brewster and others, to set aside a judgment, execution, and levy as void, under the thirty-fifth and thirty-ninth sections of the bankrupt act of 1867. Decree for plaintiff.]

T. M. North, for plaintiff.
Judah, Dickinson & Goldsmith, for Payen.
J. Sterling Smith, for sheriff.

BLATCHFORD, District Judge. On the 17th of May, 1871, Charles Payen, one of the defendants, commenced a suit against Theodore E. Baldwin, one of the bankrupts, in the supreme court of New York, to recover the sum of $6,000 and interest, for four months' rent of premises in New York, leased by Payen to Baldwin by a written lease, the rent being $18,000 per year, payable monthly in advance. The rent sued for was the rent for four months from February 1st, 1871. Baldwin appeared by attorney in the suit, but took no other proceeding. A judgment was entered in the suit, by default, because of the expiration of more than twenty days from the service of the summons and complaint, and because no answer or demurrer was served, on the 12th of October, 1871, in favor of Payen and against Baldwin, for $6,204.16. On the 16th of October, 1871, Payen issued to the defendant Brennan, as sheriff, an execution on said judgment, whereunder the sheriff, on that day, levied on all the right, title and interest of Baldwin in a stock of carriages belonging to him and the bankrupt Burr, as co-partners, and took such carriages into his custody. On the 6th of November, 1871, a petition in involuntary bankruptcy was filed in this court against Baldwin and Burr, whereon an injunction was issued, which was served on the sheriff on the 8th of November, restraining him from disposing of the carriages. Baldwin and Burr were adjudged bankrupts, and the plaintiff was appointed their assignee, and brought the first of these suits on the 12th of March, 1873, to set aside the judgment, execution and levy, as being void under the 35th and 39th sections of the bankruptcy act. An injunction was issued in this suit restraining the sale of the carriages, and, subsequently, by an order in this suit, the plaintiff was appointed receiver of the carriages, and he was directed to sell them and deposit the proceeds in the United States Trust Company. The proceeds amount to $4,791.08 and accrued interest, and are so on deposit. The assignee also brought the second of these suits to set aside a transfer of two carriages made on the 11th of October, the proceeds of which were also in his possession as receiver, such fund being $1,280.74. The assets of the bankrupts' firm, aside from the said two funds, are $12,549.50. The debts proved against the firm are over $64,000.

The bankrupt Baldwin testifies, that when the execution was levied, the assets of the firm were about 85 per cent. of its liabilities; that it had obtained previously an extension from a majority, but not all, of its creditors, and the extension notes had not matured; that some of the creditors who did not join in the extension had sued the firm, and it had not paid all the debts on which it had been sued, for the reason that it did not have the money; that the extension notes would become due October 17th, 1871, having been given April 14th, 1871; that the firm was not, on the 16th of October and before, able to pay the extension notes as they should become due on the 17th; that, between the time of the extension and the time of the levy, the financial condition of the firm did not get any better; that, at the time of the levy, he, the witness, had no property besides the lease from Payen and his interest in the firm; that he became aware, perhaps a

fortnight before the 17th of October, that he would not be able to pay the extension notes; that the rent sued for by Payen was justly due; that he did not pay it because he had no money; that Payen's agent had been asked in April to join in the extension, but did not, but gave the witness to understand, that if the rent to accrue afterwards (the lease having two years to run from the 1st of May, 1870) should be promptly paid, he would not be troubled about that which was past due; that, when the suit was commenced, in May, Payen's agent said that no judgment would be entered up if the rent to accrue subsequently should be promptly paid; that none of the rent sued for was paid; that some, but not all, of the rent afterwards accruing was paid; that the failure to pay the whole was caused by want of money; that, on the 8th or 10th of October, 1871, he, the witness, delivered to the attorney for Payen, two carriages, to be applied on the rent not sued for in the suit, but accruing afterwards, because he had not the money to pay such rent; that, a day or two before that he informed the attorney for Payen that he would not be able to meet the extension notes which were about maturing; that his bank account and other property had been attached four months previously, and was not released before the bankruptcy; that he had paid another creditor, after levy on execution; that the deputy sheriff who levied Payen's execution was the same one who had levied the attachment; and that the rent accruing between the time of the commencement of the suit and the issuing of the execution was not paid punctually or in full.

The attorney for Payen testifies, that he had a conversation with Baldwin on the 10th of October, 1871, and demanded rent of him, as he had in previous conversations; that Baldwin asked him to take goods in payment, as sales were difficult; that Baldwin said he was thoroughly solvent, and exhibited a paper showing an excess of assets over liabilities; that, either then or the next day, when the two carriages were turned out, Baldwin told him that some notes would mature about October 20th, which he would not pay, that he considered himself solvent, that his assets were beyond his liabilities, and that he was getting up a company, and his creditors had agreed, or were agreeing, to take stock therein, for those notes; that the judgment was entered adversely, without the knowledge, consent or privity of Baldwin; that judgment might have been entered in June, but its entry was delayed because of statements made by Baldwin to Payen's agent, alleging his continued solvency, and the dullness of business, and the injury to his credit which would arise from a judgment, and the sacrifice of his stock which would occur on a sale on execution, and promising to pay the rent punctually monthly thereafter; that, for two or three months, he paid the rent punctually; that

then he again alleged the dullness of business, and in reply to constant threats made by Payen's attorney to eject him, offered goods in payment, alleging his solvency; that the reason why he, as attorney for Payen, entered up the judgment, and issued the execution, was, that as assets amounting to $120,000 had so dwindled that Baldwin could not meet immediately at maturity the extension notes, and he had not been prompt in paying the rent, it showed that he had deceived either himself or the attorney for Payen in regard to his condition, and that a man of that kind could not be a thorough business man, and must sooner or later come to trouble, and the attorney thought it was his duty to use his utmost diligence in favor of his client; that he supposes Baldwin's statement of inability to meet the extension notes must have affected his conclusion; that he thought he had exhausted reasonable indulgence and less severe methods of collecting the amount due; that, in his testimony, he uses the words "solvent" and "solvency" in the sense of meeting ordinary obligations and of assets being quite sufficient to pay all liabilities; and that he knew Baldwin was not meeting his ordinary obligation for rent, and was told, on the 10th or 11th of October, that somebody had sued him for a very small amount, and he had paid it.

The plaintiff claims that the first of these two cases falls within the decision in Buchanan v. Smith, 16 Wall. [83 U. S.] 277. The defendants claim that it falls within the decision in Wilson v. City Bank, 17 Wall. [84 U. S.] 473. The latter case holds that the former case was, on the evidence in it, well decided.

Certainly, under the decision in Buchanan v. Smith, and in view of the language of the opinion of the court in that case, I could have no hesitation, on the facts of this case, in holding that the preference which Payen in fact acquired was void under the bankruptcy act. The facts in Buchanan v. Smith, as detailed by the supreme court in its opinion in that case, are, in substance, that the creditors, about a month prior to the filing of the petition in involuntary bankruptcy, recovered a judgment against the bankrupt, and issued executions thereon to the sheriff, whereunder he made levies on property which he held in possession when the petition in bankruptcy was filed; that the debtor, a corporation, was insolvent when the judgments were recovered; that it had failed to meet its paper at maturity five months before the judgments were recovered; that the creditors held six notes of the debtors which became due and were not paid, one of them five months, two of them four months, one of them three months, one of them two months, and one of them one month before the judgments were recovered; that, by renewals, the four of the six notes which fell due first were put into two notes;

that the creditors endeavored unsuccessfully to obtain payment from the debtor, and also to obtain from him as security an assignment of some policies of insurance against a loss by fire which had occurred; and that they then brought suits on the four notes. The statement of the case shows that the creditors were constantly pressing the debtor for payment, and that the debtor was asking for delay and giving assurance of payment in full; and the creditors testified that they believed the debtor was solvent, and brought suit because they thought the delay was unnecessary, and that the debtor was misusing money which he had received, and had failed to keep a promise to pay such money to the creditors, and that they did not know that the debtor owed any other persons. It also appeared, that the debtor put in a dilatory plea in each suit; that he also made an assignment, to prevent the creditors from gaining a preference by the judgments they should recover, but the creditors had no knowledge of the assignment before the judgments and executions; and that the judgments were taken by default, at last. The court held, that to set aside the judgments and executions as preferences, it must appear that the debtor, within the prescribed time, suffered its property to be seized on execution by the judgment creditors, with a view to give them a preference thereby over other creditors; that the debtor was insolvent at the time, or in contemplation of insolvency; and that the judgment creditors had, at the time, reasonable cause to believe that the debtor was insolvent, and that it suffered the seizure to be made to secure such preference, and in fraud of the provisions of the act. On the facts of the case, before stated, the court held that the debtor was insolvent at the time its property was seized on execution; that the purpose of the creditors in seizing the property was to obtain a preference over other creditors; that they had reasonable cause to believe that the debtor was insolvent; that they had the passive assistance of the debtor in obtaining the judgments and perfecting the liens by execution; that, although the debtor refused to pay the creditors or to assign security to them, it ultimately acquiesced in what they did, in obtaining liens by judgments and executions; that the debtor knew it was insolvent, and knew that the creditors intended to secure a preference over its other creditors; that it could not expect that all its debts would be paid, and must have known that the creditors would secure a preference over all its other creditors if it suffered them, without invoking the protecting shield of the bankrupt act, to recover judgment; and that, therefore, it was shown that the three things existed which were thus necessary to set aside the preferences. The court then went on to say, that "insolvency, in the sense of the bankrupt act, means, that the party

whose business affairs are in question is unable to pay his debts as they become due in the ordinary course of his daily transactions, and a creditor may be said to have reasonable cause to believe his debtor to be insolvent when such a state of facts is brought to his notice respecting the affairs and pecuniary condition of his debtor, in a case like the present, as would lead a prudent business man to the conclusion that he, the debtor, is unable to meet his obligations as they mature in the ordinary course of business." It further went on to say, that, where insolvency existed, and the means of knowledge were at hand, and such facts and circumstances were known to the creditor as ought to have put him, as a prudent man, on inquiry, it must be held that he had reasonable cause to believe that the debtor was insolvent, if it appears that he might have ascertained the fact by reasonable inquiry. It further said: "Creditors issuing executions on judgments obtained upon demands long overdue against a bankrupt, who has been pressed in repeated instances to pay or secure the demands, and has failed to do so because of his inability, must be held to have had reasonable cause to believe that his debtor was insolvent."

In the case of Wilson v. City Bank, the creditor held commercial paper, promissory notes, made by the debtors, one of which was past due more than fourteen days. The creditor brought suit on the notes. The debtors had no defence, and put in no defence, and judgment was obtained by default, and an execution was levied on all the stock in trade of the debtors. The debtors were insolvent when the suit was brought, and the creditor had then reasonable cause to believe it, and knew that the debtors had committed an act of bankruptcy, and that they had no property but their said stock in trade. The debtors gave no notice to any of their creditors that this creditor had sued them, and they did not go into voluntary bankruptcy, nor otherwise make any effort to prevent the obtaining of the judgment or the levying of the execution. They were put into involuntary bankruptcy on a petition filed thereafter. The supreme court, in its opinion, regards it as established that the debtors were insolvent when the suit was brought, and that the creditor had then reasonable cause to believe that the debtors were insolvent, and knew that they had committed an act of bankruptcy by permitting a note to go unpaid more than fourteen days after it became due. It then goes on to state, that the question to be decided is, whether the debtors suffered their property to be taken, within the meaning of the act, with intent to defeat or delay the operation of the act. It then holds, that, to constitute such intent, there must be the positive purpose of doing the act of suffering the property to be taken, and that the act of suffering the property to be taken must be done

in the prosecution of such unlawful purpose. It then holds, that the debtors, in the case before it, did not do any positive or affirmative act from which such intent can be inferred; that, through the whole of the legal proceedings against them, they remained perfectly passive; that, owing a debt which they could not pay when it became due, they were sued, and judgment was recovered and execution was levied, they affording the creditors no facilities to do this, and interposing no hindrance, and there being no positive evidence of a wish or design on their part to give the creditor a preference, or oppose or delay the operation of the act; and that such intent cannot be inferred from the inaction of the debtors or their failure to go into voluntary bankruptcy. The court then says, that very slight evidence of an affirmative character of the existence of a desire to prefer one creditor, or of acts done with a view to secure such preference, might be sufficient to invalidate the whole transaction, because the known existence of a motive to prefer or to defraud the act would color acts or decisions otherwise of no significance; that these cases must rest on their own circumstances; but that, where there is no evidence of the existence of such a motive, it cannot be imputed as a conclusion of law from facts which do not raise such an implication. It then proceeds to say, that these latter considerations serve to distinguish the case before it from that of Buchanan v. Smith. This can only mean that there was, in Buchanan v. Smith, evidence of an affirmative character, of the existence of a desire on the part of the debtor to prefer the creditors, or of acts done with a view to secure such preference. It is impossible, in the report of the case of Buchanan v. Smith, to find any such evidence as to the desire of the debtor to prefer the creditors, or any such evidence as to any act or acts done by the debtor with a view to secure such preference. The statement in the report shows only that the debtor failed to pay; that its officers made thereafter numerous promises to pay, and numerous allegations of solvency and of ultimate ability to pay; that the creditors pressed for payment, and also pressed for an assignment to them by the debtor of its claims against the insurance companies on the policies of insurance, to an extent sufficient to cover the debt due the creditors, that the debtor collected some of the insurance money, but refused to pay any of it to the creditors; that it begged not to be sued; that, when it was sued, it pleaded a plea of misnomer, in abatement, for delay; that, after that, and before judgment, the debtor made a general assignment of all its property to one Hoyt, in trust to pay its creditors, with the intention of preventing the suing creditors from getting a preference by means of their judgments; and that afterwards the judgments were entered by default and the executions levied.

The opinion of the court points out no facts in this regard, except that the officers of the debtor promised to pay, and failed to pay, and refused to assign to the creditors its claims under the policies of insurance, and made the general assignment referred to. All that the opinion points out is, that the judgment creditors had the passive assistance of the debtor in obtaining their judgments and liens. This passive assistance is stated to have consisted in the ultimate acquiescence by the debtor in what the creditors did. But the only acquiescence pointed out is, that the debtor, being insolvent, and so knowing, and knowing that the creditors intended to secure a preference, and knowing that they would secure such preference if the debtor should not voluntarily go into bankruptcy, suffered the creditors to recover the judgments and obtain the liens. If there was, in Buchanan v. Smith, on the foregoing facts, any evidence of an affirmative character of the existence of a desire on the part of the debtor to prefer the creditors, or of acts done by the debtor with a view to secure such preference, it is impossible to see why there was not equally strong affirmative evidence in Wilson v. City Bank on the facts therein, of the existence of the like desire or of the like acts. The opinion of the court in the latter case, after saying that it is to be distinguished, by the considerations before referred to, from the former case, alludes to the fact, that, in the former case, the creditors, before suing, sought to obtain a transfer of the policies of insurance, and that the general assignment was made by the debtor. But, surely, a refusal by a debtor to give, by assignment, a sought preference, cannot be invoked as affirmative evidence of a desire on his part to give a preference, nor can the making of a general assignment which has the effect and is intended to deprive a creditor of a contemplated preference by a judgment to be obtained, be invoked as affirmative evidence either of a desire to give a preference, or of an act done with a view to secure a preference. I cannot see, in Buchanan v. Smith, anything but passive non-resistance by an insolvent debtor to regular judicial proceedings, in which judgments and levies on its property were obtained, when the debts were due, and it was without just defence to the suits. I cannot see, in that case, any evidence of any making or giving by the debtor of a preference, or any evidence of any desire on the part of the debtor to prefer, or any evidence of any purpose on the part of the debtor to defeat or delay the operation of the bankruptcy act, except the omission of the debtor to file a petition in bankruptcy. In Wilson v. City Bank it is expressly held, that something more than such passive non-resistance is necessary to show a preference by a debtor of a creditor, or a purpose on the part of the debtor to defeat or delay the operation of the bank-

ruptcy act; and that the fact that the debtor, under such circumstances, does not file a petition in bankruptcy, is not sufficient evidence of such preference, or of an intent on the part of the debtor to defeat the operation of the act. In both of the cases it was found that the debtor was insolvent, and that the creditors had reasonable cause so to believe.

Now, the facts of the first of the present cases, while they bring it within the case of Buchanan v. Smith, equally bring it within the case of Wilson v. City Bank. If it is within both cases, the latter case must be followed, even though the decision of the later case does not purport to overrule the earlier case, provided the present case presents no features which are stronger in favor of the plaintiff than are to be found in the later case. While all the features of the present case are quite as strong in favor of the plaintiff as were those in Buchanan v. Smith, and would, on the authority of that case alone, demand a decision in favor of the plaintiff, such features are no stronger in favor of the plaintiff than were those in Wilson v. City Bank, and demand, on the authority of that case, a decision in favor of the defendants.

In the latter case, and in the present case, the judgment was by default, through lapse of time, on adversary process, no defence being interposed; the suit was brought for a just debt, to which no defence existed; the levy operated as a practical preference, leaving little for other creditors; the debtor was insolvent; the creditor had reasonable cause to believe that the debtor was insolvent; the debtor remained passive, unable to pay, when it became due, a debt justly due, and afforded no facilities to the creditor to recover judgment and levy execution on the debtor's property, and interposed no hindrance thereto; the debtor did no positive or affirmative act from which an intent to give a preference, or to defeat or delay the operation of the act, can be inferred; no wish or design on the part of the debtor, shown by positive evidence, existed, to give a preference or to oppose or delay the operation of the act; and, although the debtor, by inaction, permitted the creditor to obtain, by judgment and levy of execution, a preference, yet the debtor contributed nothing otherwise to the success or completion of the creditor's acts. This state of things, the court held, in Wilson v. City Bank, did not warrant the inference either that the debtor intended to suffer his property to be taken on legal process with intent to give a preference, or with intent to defeat or delay the operation of the act; or the inference that the creditor, in obtaining the judgment and making the levy, had reasonable cause to believe that a fraud on the act was intended. Baldwin put in an appearance in the suit, but such act neither hindered nor facilitated Payen, as the summons and complaint in the suit were served at one and the same time on Baldwin, before the appearance was put in.

Baldwin, two or four days before the judgment was entered, turned out to Payen's attorney two carriages, to be applied on the rent which accrued subsequently to the bringing of the suit. But this was not a preference in regard to the rent sued for. It was rather a means of delaying pressure in respect to the rent sued for, and of delaying the entry of judgment in the suit. Such judgment was not to be entered if the rent accruing subsequently to the bringing of the suit should be punctually paid. Strenuous efforts seem to have been made by Baldwin by paying such subsequent rent, to avert the entry of such judgment. The turning out of the two carriages had that tendency, and cannot be presumed, and is not shown, to have been made with any intent to promote the entry of the judgment.

Although Payen's attorney learned from Baldwin, but a few days before the judgment was entered, that Baldwin would not be able to pay the extension notes coming due, yet the fact that the information as to Baldwin's actual or contemplated insolvency came from Baldwin, cannot, under the principles laid down in Wilson v. City Bank, be held to be evidence of any wish or design on the part of Baldwin to give Payen a preference, or of the affording, by Baldwin, of any facility for obtaining the judgment. The information does not seem to have been given with the view of having the judgment entered. Although the information may in fact have determined Payen's attorney to enter the judgment, yet there is nothing to show that it was given with that wish, view or design on the part of Baldwin. On the contrary, the evidence is that the judgment was entered adversely and without the knowledge, consent or privity of Baldwin. It is not shown that any motive existed on the part of Baldwin to prefer Payen by means of the judgment, or to commit a fraud on the act in favor of Payen. The case seems to me to be one of purely passive non-resistance, like that of Wilson v. City Bank.

Under these views, although but for the decision in the last-named case, I should have deemed the present case to be controlled by the decision in Buchanan v. Smith, I must hold it to be controlled by the authority of the later case, and must, therefore, dismiss the bill in the first of these two cases, with costs to the sheriff, but without costs to Payen. But there is a distinction between the first and the second of these cases. As to the payments made to Payen's agents before the two carriages were turned out in October, it cannot be held that they were made with any view or intent on the part of Baldwin to give a preference to Payen. They were payments to Payen on account of the rent of the store occupied by

the bankrupt's firm as a place of business. The rent was accruing in advance on the first day of every month, from June 1st, 1871. The bankrupts were carrying on their business in the store as usual. Payment of the rent was in the usual and ordinary course of business of the bankrupts. True, some of it had fallen behind, and it was not paid punctually in advance as it became due. But it was all agreed to be paid by the lease, a single instrument, and the bankrupts made payments on account of it as they could, and always under threats of dispossession. The bankrupts had obtained an extension from the most of their creditors, by giving extension notes which would not fall due till October 17th. They owed Payen, on the 1st of May, $6,000, for which he brought suit in May, but he forbore to press that suit, on condition that Baldwin should pay punctually the rent to become due on and after June 1st, at the rate of $1,500 a month, in advance. The payments now sought to be set aside as preferences were payments of rent made under that arrangement. The bankrupts were endeavoring to recover themselves without failing or going into bankruptcy. They could not meet their rent as it matured, and had failed to meet some other obligations at maturity, but their creditors were forbearing, and they were meeting pressing debts, the rent being the most pressing. They were honestly struggling to meet their debts and to avoid breaking up their business. This was not an act of bankruptcy or a fraud on the act. The payments in question were made from July 10th to September 29th.

But a different state of things had supervened when Baldwin turned out the two carriages to Payen's agents on the 11th of October. Baldwin, by that time, had become satisfied that he would not be able to pay the extension notes which were to fall due October 17th, and he had so informed Payen's attorney. The turning out of the carriages was done in contemplation of Baldwin's insolvency, both on the part of Baldwin and of Payen's agents and attorney, and the facts will not justify any other conclusion than that Baldwin intended to give the preference which he in fact gave, and that Payen's agents and attorney knew that a fraud on the bankruptcy act was being consummated. It is true, that the carriages were turned out on account of the rent which accrued after June 1st, but neither the debtor nor the creditor could, on the 11th of October, have had any reasonable ground for believing that the struggle to prevent the breaking up of the business could be continued longer with success. On the 12th, Payen's attorneys proceeded to enter judgment in the suit referred to, and execution was issued on it on the 16th, and levied on all the property of Baldwin. The plaintiff is entitled to a decree as to the two carriages, with costs of suit.